UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Sascha Morris

    v.                             Civil No. 12-cv-280-JL
                                       Opinion No. 2013 DNH 085
Carolyn Colvin, Acting Commissioner,
Social Security Administration

**SUMMARY ORDER**

Sascha Morris appeals the Social Security Administration's ("SSA") denial of her applications for Social Security Disability Insurance and Supplemental Security Income.  An administrative law judge at the SSA ("ALJ") ruled that, despite Morris's severe impairment due to a herniated lumbar disc, she retains the residual functional capacity to perform jobs that exist in significant numbers in the national economy, and, as a result, is not disabled.  See 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Appeals Council later denied Morris's request for review of the ALJ's decision, see id. § 404.968(a), with the result that the ALJ's decision became the SSA's final decision on Morris's application, see id. § 404.981.  Morris then appealed the decision to this court, which has jurisdiction under 42 U.S.C. § 405(g) (Social Security).

Morris has filed a motion to reverse the decision.  See L.R. 9.1(b)(1).  She argues that the ALJ made three errors in

concluding that she retained the capacity to perform jobs that exist in significant numbers in the national economy:

> (1) the ALJ "ignored" Morris's migraine headaches;
>
> (2) the ALJ did not contact Morris's treating physician to clarify the basis of his opinion that Morris was disabled before dismissing that opinion as unsupported by the record evidence; and
>
> (3) the ALJ did not adequately support her finding that Morris's subjective complaints of pain were not credible.

The Commissioner of the SSA has cross-moved for an order affirming the ALJ's decision.  See L.R. 9.1(d).  He argues that the ALJ:

> (1) specifically acknowledged Morris's history of migraine headaches and took them into account when rendering her decision;
>
> (2) had no obligation to contact Morris's treating physician for further clarification; and
>
> (3) provided a sufficient rationale for her credibility assessment.

As explained below, Morris's first two assignments of error are without merit.  The court agrees with Morris, however, that the ALJ improperly assessed her credibility when testifying about her pain and other symptoms, and accordingly grants her motion to reverse (and denies the commissioner's motion to affirm) the ALJ's decision.

The court therefore addresses the credibility issue first. According to Social Security Ruling ("SSR") 96-7p, when a

claimant alleges disability attributable in whole or in part to "symptoms, such as pain, fatigue, shortness of breath, weakness or nervousness"--as Morris did in this case--the ALJ must undertake the following evaluation:

> * First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. . . . If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
>
> * Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (S.S.A. 1996).  In addition:

In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR [§§] 404.1529(c) and 416.929(c) describe the kinds of evidence, including the factors below, that the adjudicator must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements:

> 1.  The individual's daily activities;
>
> 2.  The location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> 3. Factors that precipitate and aggravate the symptoms;
>
> 4.  The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> 5.  Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> 6.  Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> 7.  Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.[1]

---

[1]These seven considerations are commonly referred to as the Avery factors in this circuit. See, e.g., Lalime v. Astrue, 2009 DNH 053, at 23-24 (citing Avery v. Sec'y of HHS, 797 F.2d 19 (1st Cir. 1986)). "Detailed written discussion of the Avery factors is desirable," id. (citing Frustaglia v. Sec'y of HHS, 829 F.2d 192, 195 (1st Cir. 1987)), to enable a reviewing court to evaluate the basis for an ALJ's credibility determination. Here, the ALJ's opinion does not discuss the Avery factors at all. To

Id. at *3. SSR 96-7p therefore "outlines a specific staged inquiry that consists of the following questions, in the following order:  (1) does the claimant have an underlying impairment that could produce the symptoms he or she claims?; (2) if so, are the claimant's statements about his or her symptoms substantiated by objective medical evidence?; and (3) if not, are the claimant's statements about those symptoms credible?" Griffiths v. Astrue, No. 11-cv-195-JL, 2012 WL 1565395 at *9 (D.N.H. Apr. 3, 2012) (citations omitted); see also Clavette v. Astrue, No. 10-cv-580-JL, 2012 WL 472757 at *8 (D.N.H. Feb. 7, 2012) (outlining same inquiry).

Here, the ALJ appropriately addressed the first step in this inquiry, concluding that Morris's "medically determinable impairment could reasonably be expected to cause the alleged symptoms." Admin. R. at 17.  Rather than proceeding to the next step and examining whether Morris's statements about her symptoms

---

be sure, an ALJ need not "slavishly discuss each of the factors," Ingle v. Astrue, No. 10-cv-103-SM, 2010 WL 5070766, at *6 (D.N.H. Nov. 8, 2010), and may satisfy her obligation to consider the factors simply by exploring them at the administrative hearing, Lalime, 2009 DNH 053 at 24.  An examination of the hearing transcript reveals that the ALJ took testimony about many of the Avery factors, but she does not appear to have explored all of them.  See generally Admin. R. at 42-51.  The court would be reluctant to reverse the ALJ's opinion solely on that basis, but because remand is necessary for other reasons, it is worth noting that further exploration of the Avery factors may be advisable on remand.

Case 1:12-cv-00280-JL   Document 16   Filed 06/06/13   Page 6 of 11

were substantiated by objective medical evidence, however, the
ALJ appears to have collapsed the second and third steps into a
single step.  Specifically, the ALJ concluded that Morris's
"statements concerning the intensity, persistence, and limiting
effects of [her] symptoms are not credible," and noted in support
of this conclusion that

> [Morris] told the examining agency program psychologist
> that she frequently shops on the internet, enjoys
> reading, does a moderate amount of socializing, etc.
> which undercuts the picture she paints in her testimony
> of lying around all day.  Further, her primary care
> physician noted that the claimant had resolution of all
> of her tissue pain and the agency program psychologist
> noted a negative mini mental state examination.
>
> . . .
>
> The claimant has not sought care from a specialist
> since 2009.  She has not had hospital emergency room
> visits.  While she has a measure of back pain the
> neurological examinations of her primary care physician
> are normal except for absent plantar reflexes
> (bilaterally).  Straight-leg raising is negative.

Id. (citations omitted).

Thus, the ALJ relied on several pieces of objective medical
evidence--"a negative mini mental state examination," "the
neurological examinations of [Morris's] primary care physician,"
and the results of Morris's straight-leg raise--in finding that
Morris's statements concerning her symptoms were not credible.
But, as outlined above, "[t]he lack of objective medical evidence
supporting a claimant's statements about her symptoms is what

6

triggers an ALJ's obligation to conduct a credibility assessment,
not evidence that the claimant's statements lack credibility."
Clavette, 2012 WL 472757 at *9; see also Ingle, 2010 WL 5070766
at *6 (ALJ must find lack of support in objective medical
evidence before weighing credibility of claimant's complaints
about pain).  So, by taking objective medical evidence into
account as a part of her credibility assessment, the ALJ did not
properly conduct the sequential inquiry mandated by SSR 96-7p,
and the court must reverse the ALJ's decision and remand the case
for further proceedings.

Morris's two remaining assignments of error are considerably
less well-taken.  First, the ALJ did not "ignore" Morris's
migraine headaches, as Morris asserts.  Indeed, Morris herself
concedes that the ALJ expressly acknowledged Morris's testimony
about the migraines in her written decision.  See Admin. R. at
17.  In light of this concession, the precise nature of Morris's
objection to the ALJ's evaluation of her migraines is unclear,
but her main grievance would appear to be that the ALJ did not
treat her migraines as an "impairment" and independently evaluate
their severity; instead, the ALJ treated them as a symptom of
Morris's herniated disc and associated back pain.  See Memo. in
Supp. of Pl.'s Mot. to Reverse (document no. 12) at 10 (asserting
that the ALJ "never determined if the migraine headaches were a

7

severe impairment" and "ignored the diagnosis migraine headaches in contemplating [Morris's] impairments").

This argument is more than a little disingenuous.  Although Morris now contends that her migraines are "one of [her] major medical impairments," id. at 12, she did not identify her migraines as one of the "illnesses, injuries, or conditions that limit [her] ability to work" in her application for benefits, see Admin. R. at 182, nor did she identify them in her appeal from the initial denial of her claim, see id. at 209.  At no other time prior to the hearing before the ALJ did Morris assert that her migraines were one of her disabling conditions, and (so far as the court has been able to tell) none of the medical records she submitted to the agency reflect a diagnosis, or even so much as a complaint, of migraines.[2]  It was not until the hearing itself that Morris first mentioned her migraines, and even then she did so only cursorily.  See id. at 36, 39, 56.  When, as

---

[2]Morris takes significant liberties with the record, stating that "the treating physician's progress notes recorded the diagnosis of chronic migraine headaches throughout the period of alleged disability."  Memo. in Supp. of Pl.'s Mot. to Reverse (document no. 12) at 9 (citing record).  Though the physician's notes Morris cites in support of this assertion refer in passing to migraine headaches, these references indicate that Morris had a past medical history of migraines, not a current diagnosis of migraines (let alone "chronic" migraines).  None of those notes indicate that Morris was seeking treatment for migraines, and several of them explicitly state that at the time of Morris's visits, headaches were "not present" or that her head was "normal."  See Admin. R. at 351, 355, 366, 369, 391, 394.

here, "a claimant is represented, the ALJ should ordinarily be entitled to rely on claimant's counsel to structure and present the claimant's case in a way that claimant's claims are adequately explored," Faria v. Comm'r of Soc. Sec., 187 F.3d 621 (1st Cir. 1998) (unpublished) (citation and internal quotation marks omitted), and the SSA regulations also make clear that the agency "will consider only impairment(s) [a claimant claims to] have or about which [the SSA] receives evidence" and that the claimant has the burden of "bring[ing] to [the SSA's] attention everything that shows" disability, 20 C.F.R. § 404.1512(a). Given the procedural history just recited, the court can ascribe no error to the ALJ's treatment of Morris's migraines as a symptom of Morris's herniated disc, rather than as a standalone impairment.[3]

Second, the ALJ had no duty to contact Morris's treating physician, Dr. Rork, to seek clarification of his opinion that Morris was disabled.  The SSA regulations at 20 C.F.R. §§ 404.1512(e) and 416.912(e), upon which Morris relies, require an ALJ "to seek additional evidence or clarification from [a] medical source when the report from [the] medical source contains

---

[3]In any event, if Morris truly believes her migraine headaches should be treated as an impairment and evaluated accordingly, she will be able to make that position clear to the ALJ on remand.

a conflict or ambiguity that must be resolved."[4]   They do not require an ALJ to contact a medical source "when evaluations are inconsistent with other information in the record or when the ALJ finds the treating physician's opinion unpersuasive." Abubakar v. Astrue, No. 11-cv-10456, 2012 WL 957623 at *11 (D. Mass. Mar. 21, 2012).  That was the case here, where the ALJ specifically found that Dr. Rork's opinion was "not supported by . . . the other evidence of record." Admin. R. at 15.  Given this finding, which Morris does not challenge on appeal and which was well within the ALJ's purview, see 20 C.F.R. §§ 404.1527(c), 416.927(c), the ALJ committed no reversible error by not contacting Dr. Rork. Abubakar, 2012 WL 957623 at *11; see also Cooper v. Astrue, No. 10-cv-10782, 2011 WL 1163127 at *7 (D. Mass. Mar. 29, 2011) (ALJ did not err by not contacting treating physicians where she "had substantial evidence before her contradicting the treating physicians' opinions").

Based on the foregoing, Morris's motion to reverse the Commissioner's decision[5] is GRANTED, and the Commissioner's

---

[4]The regulations contained the quoted language at the time the ALJ rendered her decision on Morris's claim, but were subsequently amended to remove it.  See How We Collect and Consider Evidence of Disability, 77 Fed. Reg. 10651, 10655-56 (Feb. 23, 2012).  Neither party has suggested that this amendment has any significance to Morris's appeal.

[5]Document no. 11.

motion to affirm that decision[6] is DENIED.   See 42 U.S.C. §
405(g).   The clerk shall enter judgment accordingly and close the
case.

       **SO ORDERED.**

                                           _____
                                        Joseph N. Laplante
                                        United States District Judge

Dated: June 6, 2013

cc:  Michael James Kelley, Esq.
     Tanya Paszko Millett, Esq.
     T. David Plourde, Esq.

---

[6]Document no. 14.

11